**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FREIGHT TRAIN ADVERTISING, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-cv-2803 |
| ) | |
| CHICAGO RAIL LINK, LLC ) | |
| ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, FREIGHT TRAIN ADVERTISING, LLC ("FTA"), by and through its attorneys, The Wix Law Group, LLC and Bell Nunnally & Martin, LLP, for its First Amended Complaint against Defendant, CHICAGO RAIL LINK, LLC ("CRL"), states as follows:

**NATURE OF THE ACTION**

1. This is an action brought by FTA, an outdoor advertising company, against CRL, a railroad operator, for damages caused by CRL's material and false representations and/or omissions which induced FTA to enter into an agreement with CRL to lease railroad track for purposes of displaying advertisements on CRL's property. In the alternative, CRL breached the parties' agreement by, among other things, refusing to provide FTA access to the leased track for displaying advertisements and by removing CRL's property from the leased track.

**PARTIES**

2. FTA is a Texas Limited Liability Company with its principal place of business in Carrollton, Texas.

3. CRL is a Colorado Limited Liability Company with its principal place of business in Denver, Colorado. CRL has appeared herein.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court based on 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

5. This Court has jurisdiction over CRL because CRL transacts business in Illinois, and/or CRL owns, uses, or possesses real property in Illinois, and/or CRL made or performed a contract substantially connected with Illinois.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) as a substantial part of the events or omissions giving rise to the claims occurred in Chicago Illinois, and/or a substantial part of property that is the subject of the action is situated in Chicago, IL.

## BACKGROUND FACTS

7. On or around September 1, 2010, FTA (under its former name, Radiant OOH, LLC[1]) and CRL entered into a Track Lease Agreement ("Agreement"). FTA attaches a copy of the Agreement as Exhibit A and incorporates it by reference.

8. Pursuant to the Agreement, CRL purported to lease to FTA certain of its railroad property upon which FTA constructed a section of additional railroad track for the sole purpose of parking a unique advertising rail car, known as a Mobile Signage Unit, which was also built by FTA. The subject property owned or controlled by CRL is located on Root Street Wye in Chicago, Illinois.

9. The Agreement restricted FTA's use of the railroad track exclusively to "the purpose of parking a Mobile Signage Unit and for no other purposes whatsoever."[2] Thus, the fundamental and exclusive purpose of the Agreement was to lease track to FTA to display advertisements.

---

[1] On or about, January 24, 2011, Radiant OOH, LLC filed a Certificate of Amendment with the Texas Secretary of State to change its name to Freight Train Advertising, LLC.
[2] Exhibit A at ¶4.1.

**FIRST AMENDED COMPLAINT**                                                    **Page 2**

10.     During the contract negotiations, CRL, through Adam Hess, represented and warranted that it possessed, owned, and controlled the right to lease the property for advertising purposes to FTA. These representations and warranties were material to FTA's decision to enter the Agreement.

11.     Under the Agreement, CRL was required to operate the railroad track "for the purpose of serving [FTA]" in its advertising operations.[3] In exchange, FTA was required to pay to CRL a monthly rental fee plus an additional thirty percent of FTA's net profits received from customers purchasing advertisements displayed on the Mobile Signage Unit.[4]

12.     After the Agreement was entered, FTA constructed a track on CRL's property and parked its Mobile Signage Unit on the leased property pursuant to the parties' Agreement.

13.     On or around January 31, 2011, the Illinois Department of Transportation ("IDOT") sent a letter to CRL through CRL's parent organization OmniTRAX, Inc. ("OmniTRAX") demanding that it remove FTA's advertising from the leased property ("IDOT Letter"). OmniTRAX manages CRL's railroad. FTA attaches a copy of the IDOT Letter as Exhibit B and incorporates it by reference.

14.     The IDOT Letter indicated that pursuant to a binding agreement entered into by CRL's predecessor-in-interest and the State of Illinois dating back to 1961, CRL is prohibited from erecting or granting permission to erect any advertising on the property that CRL leased to FTA. FTA attaches a copy of the State of Illinois restrictive agreement as Exhibit C and incorporates it by reference. Specifically, Section 13 of the State of Illinois restrictive agreement provides: "RAILROAD further agrees not to erect, nor grant permission to others to erect, any advertising sign on RAILROAD property within the limits of this improvement."

---

[3] Exhibit A at ¶16.1.
[4] Exhibit A at ¶¶3.1-3.2.

**FIRST AMENDED COMPLAINT**                                                                                           Page 3

15. Despite the existence of the restrictive agreement, no one from CRL, including the lead negotiator and signatory of the Agreement, Mr. Hess, ever disclosed or even mentioned the restrictive agreement to FTA.

16. On or about February 10, 2011, FTA received a copy of the IDOT Letter and the 1961 State of Illinois restrictive agreement. For the first time, FTA learned that CRL lacked the authority to convey a leasehold interest to FTA to advertise on its property.

17. On or about February 23, 2011, FTA learned that FTA's Mobile Signage Unit was removed from the leased track. FTA never authorized the removal and never gave CRL, or anyone else, permission to remove its property from the leasehold.

18. Around the same time as the receipt of the IDOT Letter, FTA also discovered yet another glaring material omission on CRL's part. Unbeknownst to FTA, and undisclosed by CRL (despite numerous communications and a lengthy and involved negotiation of the Agreement), CRL had previously applied for a multi-million dollar rail improvement grant from IDOT. This grant, by CRL's own admissions, was extremely important to CRL and vital to CRL's remaining competitive in the Chicago short rail freight industry.

19. Throughout the negotiations with CRL, CRL, and namely, Adam Hess, never once informed FTA of the importance of the IDOT grant or its existence. Unfortunately for FTA, the significance of the IDOT grant was made known to FTA when CRL removed the mobile signage unit from the track due to IDOT's threatened termination of the grant process and withholding of all funding.

20. Mr. Hess confirmed how important the grant was to CRL by confessing to FTA and its representatives, Ray Sipperly and Brad Berkley and also to a business partner of FTA's, Ted Johnson of Rail Road Media, LLC, on numerous occasions that CRL would roll the Mobile

Signage Unit back on the track just as soon as CRL closed the IDOT grant. Those statements and promises proved untrue. Since that promise was made Mr. Hess has continually changed his promise of rolling out the Mobile Signage Unit from the closing of the grant, to initial funding of the grant, to final funding of the grant, and finally to an ill-defined, non-binding date in the open-ended future. Regardless of the illusory promises of CRL, FTA was left to suffer the consequences of CRL's deception. FTA unequivocally suffered injury in that it expended hundreds of thousands dollars entering the Agreement and performing there-under – all actions it would have foregone had CRL, just been truthful about the 1961 restrictive agreement and CRL's circumstances with IDOT.

21. As FTA's sole purpose for the lease was to utilize CRL's property for advertising purposes, FTA would not have entered the Agreement, nor expended substantial resources to improve the property, including, but limited to, constructing the track and Mobile Signage Unit, nor incurred any other related costs, had CRL disclosed that it lacked the authority to, or that there was a substantial risk that it could not, lease its property for advertising purposes.

### Count I. Fraudulent Misrepresentation.

22. FTA restates and realleges the allegations set forth in the preceding paragraphs of its Complaint as if fully set forth herein.

23. CRL represented to FTA that it had the authority and rights to lease its property to FTA for FTA's stated purpose of advertising. CRL's representations were material as the express purpose of the Agreement was for FTA to construct a track on CRL's property on which it would park its Mobile Signage Unit displaying advertising. The materiality is further evidenced by the fact that FTA's use of the leased track is strictly limited to advertising purposes.

24. As became evident from the IDOT Letter, CRL's representations were demonstratively false. The 1961 restrictive agreement between CRL's predecessor-in-interest and the State of Illinois expressly prohibits CRL from erecting or permitting others to erect advertisements on the subject property. When Mr. Hess and CRL represented that CRL had the authority to enter into the Agreement, CRL knew (or certainly should have known) that the representations of capacity to enter the Agreement were lacking. As such, CRL's material statements were false or made with sufficient recklessness to be actionable as fraud.

25. CRL made the representations with the intention that the representations would induce FTA to enter into the Agreement. FTA relied on CRL and Mr. Hess's representations, entered the Agreement, and suffered damages by, among other things, constructing the track and the Mobile Signage Unit at substantial expense to itself. FTA would not have contracted with CRL nor would FTA have incurred any costs and expenses, including the construction of the track or the Mobile Signage Unit, if it were not for CRL's and Mr. Hess's representations of CRL's authority to convey a leasehold interest for advertising purposes.

26. By reasonably relying upon and acting upon the representations, FTA was injured in that it expended extensive resources to perform its obligations under and reliance upon the Agreement, such as, but not limited to, constructing the track and Mobile Signage Unit. In addition, FTA has suffered damages in the form of lost advertising revenues. By this suit, FTA seeks its damages, fees, costs, and interest from CRL in the maximum amounts permitted by law.

## Count II. Negligent Misrepresentation.

27. FTA restates and realleges the allegations set forth in the preceding paragraphs of its Complaint as if fully set forth herein.

28. Alternatively, CRL negligently represented to FTA that it had the authority and rights to lease its property to FTA for FTA's stated purpose of advertising. CRL's representations were material as the express purpose of the Agreement was for FTA to construct a track on CRL's property on which it would park its Mobile Signage Unit displaying advertising. The materiality is further evidenced by the fact that FTA's use of the leased track is strictly limited to advertising purposes.

29. As became evident from the IDOT Letter, CRL's representations were demonstratively false. The 1961 restrictive agreement between CRL's predecessor-in-interest and the State of Illinois expressly prohibits CRL from erecting or permitting others to erect advertisements on the subject property. CRL failed to exercise reasonable care or competence in communicating that restriction regarding its ability to lease its land for advertisement purposes to FTA. CRL had a duty to FTA not to communicate demonstratively false statements, or at the very least, to disclose material facts, which facts were uniquely and solely known only to itself. If CRL had exercised reasonable care and competence, it would have known that it was not permitted by its prior restrictive agreement to lease its property for advertising purposes and it would have communicated that limitation to FTA. CRL breached its duty owed to FTA.

30. As a foreseeable result, FTA relied on CRL and Mr. Hess's representations, entered the Agreement, and suffered damages, by, among other things, constructing the track and Mobile Signage Unit at substantial expense to itself. FTA would not have contracted with CRL nor would FTA have incurred any costs and expenses, including the construction of the track or

Mobile Signage Unit, if it were not for CRL and Mr. Hess's negligent representations of CRL's authority to convey a leasehold interest for advertising purposes.

31. By reasonably relying upon and acting upon CRL's representations, FTA was foreseeably injured by CRL's breach of its duty owed to FTA. CRL's negligence proximately caused FTA to suffer damages evidenced by the expenditure of extensive resources to perform its obligations under and reliance upon the Agreement, such as, but not limited to, constructing the track and Mobile Signage Unit. In addition, FTA has suffered damages in the form of lost advertising revenues. By this suit, FTA seeks its damages, fees, costs, and interest from CRL in the maximum amounts permitted by law.

## Count III. Fraudulent Concealment.

32. FTA restates and realleges the allegations set forth in the preceding paragraphs of its Complaint as if fully set forth herein.

33. Alternatively, CRL knew it did not have the authority and rights to lease its property to FTA for FTA's stated purpose of advertising. Despite such knowledge, CRL concealed from FTA the fact that it did not have the authority and rights to enter into the Agreement. Specifically, CRL failed to disclose to FTA the 1961 restrictive agreement with the State of Illinois and CRL's corresponding inability to authorize advertisements on its property.

34. CRL's omissions were material as the express purpose of the Agreement was for FTA to construct a track on CRL's property on which it would park its Mobile Signage Unit displaying advertising. The materiality is further evidenced by the fact that FTA's use of the leased track is strictly limited to advertising purposes.

35. Additionally, CRL fraudulently concealed its relationship with IDOT. CRL knew or should have known that the pending grant would have materially impacted any negotiations with

FTA. In fact, the existence of the grant would have precluded FTA's entering the Agreement altogether.

36. FTA would not have contracted with CRL nor would FTA have incurred any costs and expenses, including the construction of the track and Mobile Signage Unit, if it CRL had disclosed the 1961 restrictive agreement, disclosed that it did not have authority to convey a leasehold interest for advertising purposes, and that CRL was seeking the grant from IDOT.

37. By reasonably relying upon and acting in the face of the omissions, FTA was foreseeably injured in that it expended extensive resources to perform its obligations under and reliance upon the Agreement, such as, but not limited to, constructing the track and Mobile Signage Unit. In addition, FTA has suffered damages in the form of lost advertising revenues. By this suit, FTA seeks its damages, fees, costs, and interest from CRL in the maximum amounts permitted by law.

## Count IV. Breach of Contract.

38. FTA restates and realleges the allegations set forth in the preceding paragraphs of its Complaint as if fully set forth herein.

39. Alternatively, if it is determined that the Agreement is valid and enforceable, then CRL breached the Agreement.

40. By way of example only, CRL breached the Agreement by: (1) failing to transfer a leasehold interest to FTA to advertise on CRL's property; (2) failing to operate the leased track for the purpose of serving FTA; (3) failing to provide FTA access to the leased track to park its Mobile Signage Unit; (4) interfering with FTA's quiet enjoyment of the leased track; and (5) removing FTA's Mobile Signage Unit from the leased track without FTA's authorization or permission.

41. FTA fully performed all of its contractual obligations under the Agreement.

42. As a direct and proximate result, FTA has suffered actual damages in an amount of at least $300,000.00. FTA has furthered suffered consequential damages as a result of CRL's breach of contract in an amount of at least $7,000,000.00 in the form of lost advertising revenues. By this suit, FTA seeks its damages, fees, costs, and interest from CRL in the maximum amounts permitted by law.

## ATTORNEY FEES AND COSTS

43. Due to CRL's conduct, including its breach of the Agreement, FTA has been forced to retain counsel to enforce FTA's rights and remedies. Pursuant to Paragraph 18.2 of the Agreement, FTA is entitled to recover all "costs of any claims, suits, judgments, costs, legal fees, court costs, and all other related expenses incurred by [FTA] arising from or growing out of [CRL] defaulting in any of the terms of this Agreement."

## PRAYER FOR RELIEF

44. WHEREFORE, Plaintiff, Freight Train Advertising, LLC respectfully prays that this Court enter judgment in its favor and against Defendant, Chicago Rail Link, LLC., and award Plaintiff its actual damages, consequential damages, reasonable attorneys' fees, costs of court, pre-judgment and post-judgment interest at the highest rate or rates permitted by law, and for such other and further relief, at law or in equity, general or specific, to which FTA may show itself justly entitled.

Respectfully submitted,

**THE WIX LAW GROUP, LLC**

By: /s/ David G. Wix

David G. Wix
The Wix Law Group, LLC
500 Lake Cook Road
Suite 350
Deerfield, IL 60015
(847) 267-9949
(866) 267-2949 (fax)
dwix@wixlaw.cim

Mikel J. Bowers (Admitted *pro hac vice*)
3232 McKinney Avenue
Suite 1400
Dallas, Texas 75204
(214) 740-1400
(214) 740-1499 (fax)

*Attorneys for Plaintiff*
*Freight Train Advertising, LLC*

873175_1

## CERTIFICATE OF SERVICE

      I, an attorney for Plaintiff, hereby certify that on November 16, 2011 I caused to be electronically filed the foregoing First Amended Complaint by using the CM/ECF system, which will send a notice of electronic filing to the following:

Michael Barron
Peter C. McLeod
Fletcher & Sippel
29 N. Wacker Dr.
Suite 920
Chicago, IL 60606

                          /s/ David G. Wix_____
                          David G. Wix