IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **FREIGHT TRAIN ADVERTISING, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-2803 |
| vs. | ) | |
| | ) | |
| **CHICAGO RAIL LINK, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**FREIGHT TRAIN ADVERTISING, LLC'S
STATEMENT OF CONTESTED LEGAL ISSUES**

Plaintiff Freight Train Advertising, LLC ("FTA" or "Plaintiff") files this, its Statement of Contested Legal Issues:

Plaintiff has asserted the following claims in this lawsuit: (1) breach of contract; and alternatively, (2) negligent misrepresentation; (3) fraudulent concealment; and (4) fraudulent misrepresentation. To provide context and assist the Court in understanding the contested legal issues discussed below, a brief statement of Plaintiff's factual position in the case is warranted.

Following almost six months of intense negotiations regarding contractual terms and multiple site visits to determine a proper location, FTA and Chicago Rail Link, LLC ("CRL" or "Defendant") entered the Track Lease Agreement for the express purpose of allowing Plaintiff to construct a spur railroad track on CRL's property over the Dan Ryan Freeway and to place an advertising railcar, referred to as a Mobile Signage Unit ("MSU"), on the newly constructed track. It was understood by both parties, and specifically discussed in the Track Lease Agreement, that the MSU would be used for the purpose of displaying advertising to generate revenue, which was the mutual goal of both parties. To that end, the Track Lease Agreement

specifically prohibits Plaintiff from utilizing the newly constructed track or the leased property for any other purpose whatsoever. Both parties believed, as a result of their respective research and due diligence, that the contemplated railcar advertising, although innovative, was not illegal under, or otherwise prohibited by federal, state or municipal law. But, both parties anticipated that due to its innovation, the use of the MSU for displaying advertising would be the subject of legal or regulatory challenge at some point. To that end, the parties heavily negotiated and mutually agreed upon contractual provisions which: (1) gave Plaintiff the right to defend against all challenges that were lodged, governmental or private, against the MSU; (2) ensured Plaintiff sufficient time to defend against such anticipated challenges; and (3), protected Defendant, both legally and financially, when such challenges occurred. *See* Track Lease Agreement at §§ 1.2, 4.3, 8, and 13 (attached as Exhibit A to Plaintiff's Complaint (Docket No. 1-1)).

Defendant breached each of the above-referenced provisions, as discussed below more fully, by withholding information from Plaintiff and unilaterally removing the MSU from the track without notice to Plaintiff after challenges arose, only one of which was disclosed to FTA. Defendant's actions were taken, not to avoid any legal or regulatory liability, but instead to protect a previously undisclosed, multi-million dollar grant application Defendant had pending with the Illinois Department of Transportation ("IDOT"), that Defendant would not allow to be jeopardized by the Track Lease Agreement.

A.  **Breach of Contract Claim**

To recover on its claim for breach of contract, Plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by Plaintiff; (3) breach of the contract by Defendant; and (4) that Plaintiff suffered a resultant injury. *Henderson-Smith & Assoc., Inc. v.*

*Nahamani Family Service Center, Inc.*, 323 Ill.App.3d 15, 27 (Ill. App. 1st Dist. 2001). In this matter, the Court must decide the following contested legal issues:

### 1. Did Plaintiff perform its obligations under the Track Lease Agreement?

Plaintiff contends that it fully performed its obligations under the Track Lease Agreement by properly constructing the spur track on the leased property, constructing (offsite) the MSU to the appropriate legal standards, rolling the MSU onto the track, paying Defendant the rental payments required under the Track Lease Agreement, and working to contest the anticipated challenge made by IDOT to the legality of the MSU. Plaintiff performed under the Track Lease Agreement until the MSU was unilaterally removed from the track, without notice to or permission from Plaintiff, and Plaintiff's efforts were rendered meaningless by the conduct of Defendant.

Defendant contends that Plaintiff failed to perform because Plaintiff failed to preemptively obtain alleged permits under state and local law. Plaintiff contends that no such permits are required in relation to the MSU, and pursuant to the terms of the Track Lease Agreement, no preemptive actions in relation to any such permits are required. The very terms of the Track Lease Agreement discuss Plaintiff's compliance with any "rulings" or "directives," and thus, comply with actions that occur after, or as a result of, any of the disputes anticipated by the parties, which would include challenges relating to permitting issues. *See* Track Lease Agreement at § 4.3. But, Defendant ignores the fact that the legal challenge made by IDOT and the "safety concerns" raised by the City of Chicago Building Commission did not relate to permitting issues. Thus, as a matter of contractual interpretation, the Court must review the language of the Track Lease Agreement and determine that, taken as a whole, the Track Lease Agreement requires only that Plaintiff comply with applicable laws or bring itself into

compliance with applicable laws if it is found to be in violation after exercising its right to defend against any such claim; nothing more.

Defendant further contends that Plaintiff failed to perform because Plaintiff failed to comply with applicable laws. However, in doing so, Defendant ignores the fact that Plaintiff had a bargained-for right to defend against challenges to Plaintiff's compliance with any laws that may or may not be applicable. At the time the MSU was removed from the track, only a legal challenge had been presented by IDOT against Plaintiff in relation to the MSU. There had been no finding that Plaintiff was in violation of any laws or regulations or that Plaintiff had not remedied any such conduct that violated said laws as it was permitted to do under the contract. There was also a vague safety challenge made by the City of Chicago Building Commission; a challenge that was concealed from Plaintiff until after the MSU had been removed from the track. Long before any determination of the validity of these two challenges could have been made, favorable to Plaintiff or not, Defendant robbed Plaintiff of its right to defend against these challenges. Thus, at the time the MSU was removed from the track, Plaintiff was performing as bargained for and Defendant was actively and materially breaching the Track Lease Agreement. *See Mayfair Const. Co. v. Waveland Assoc. Phase I Ltd.*, 249 Ill.App.3d 188, 202-03 (1st Dist. 1993) (holding that breach of provision allowing for architect review of disputes was material because it deprived one party of its "bargained-for right to quick resolutions").

**2.     Did Defendant Breach the Track Lease Agreement?**

Plaintiff contends that Defendant breached the Track Lease Agreement by:

(1)     failing to allow Plaintiff to contest the challenges made to the legality of the MSU by IDOT;

(2)     interfering with Plaintiff's right to defend against IDOT's challenge by dealing with IDOT behind Plaintiff's back in order to protect a previously

        undisclosed, multi-million dollar grant application Defendant had pending with IDOT;

(3)      failing to allow Plaintiff to contest the "safety concerns" raised by the City of Chicago Building Commissioner to the MSU, or for that matter, failing to even provide notice of said "safety concerns" to Plaintiff;

(4)      removing the MSU from the leased track without Plaintiff's authorization or approval, and without notice to Plaintiff that the MSU was to be removed;

(5)      after removing the MSU from the leased track, failing to provide Plaintiff with access to the leased track to park the MSU as agreed in the Track Lease Agreement; and

(6)      failing to operate the leased track for the purpose of serving Plaintiff.

Defendant's breaches were material in that they "worked to defeat the bargained-for objective" of the parties, as discussed above. *See Virendra S. Bisla, M.D., Ltd. v. Parvaiz*, 379 Ill.App.3d 567, 573 (1st Dist. 2008).

Defendant contends that its actions were excused by Plaintiff's prior breach of the Track Lease Agreement in that the MSU failed to comply with applicable law, and Plaintiff failed to preemptively obtain necessary permits and authorizations for the MSU. However, "only a material breach of a contract provision will justify non-performance by the other party." *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 714 (7th Cir. 1993) (citing *Borys v. Rudd*, 152 Ill. Dec. 623, 628, 566 N.E.2d 310, 315 (1990)). Materiality in this context is decided by examining the failure of performance and determining if the failure of performance is of such a nature and of such importance that the contract would not have otherwise been made. *Francorp, Inc. v. Siebert*, 126 F. Supp. 2d 543, 547 (N.D. Ill. 2000). Here, Plaintiff specifically and heavily negotiated the right to address any potential legal challenges that were raised due to the innovative nature of the conduct contemplated by the Parties. As such, Plaintiff contends that a mere legal challenge, which is all that occurred, that was in the process of being contested per

the terms of the Track Lease Agreement was insufficient to constitute a prior material breach. Moreover, the Track Lease Agreement explicitly provided Defendant with a remedy – Plaintiff was obligated to indemnify Defendant for any harm resulting from challenges to the legality of the MSU. Defendant never demanded indemnification under this provision although Plaintiff was prepared to do so. Moreover, as discussed above, Plaintiff was not in breach of the Track Lease Agreement for failing to obtain permits or comply with any applicable laws.

### 3. Did Plaintiff suffer a resultant injury from Defendant's breach of the Track Lease Agreement?

Plaintiff contends that it suffered a resultant injury from Defendant's breach of the Track Lease Agreement. Plaintiff contends that it is entitled to receive compensatory damages in excess of $260,000.00 for its costs incurred in constructing the track, constructing the MSU, insurance, legal fees related to negotiations, engineering services, transportation costs, and otherwise complying with the terms of the Track Lease Agreement. Plaintiff contends that it is also entitled to recover up to $8,736,400.00 in lost advertising revenue resulting from Defendant's conduct.

Plaintiff also contends that it is entitled to a recovery of its attorneys' fees in this matter as a prevailing party pursuant to Section 18 of the Track Lease Agreement. At present, Plaintiff and Defendant are prepare to bifurcate consideration of the attorneys' fee question until after the Court renders a decision upon the remainder of the claims at issue. However, if the Court desires, Plaintiff is prepare to present evidence in support of its claim for attorneys' fees at the time of trial.

### B. Alternative Fraudulent/Negligent Concealment Claims

Alternatively, Plaintiff contends that Defendant fraudulently and negligently concealed information that would have been vital to Plaintiff's decision to enter into the Track Lease

Agreement. Specifically, Defendant failed to disclose to Plaintiff the existence of the 1961 Agreement with IDOT, which IDOT used a basis for contending that use of the MSU on the leased property was not permitted. If Defendant had exercised even minimal due diligence prior to entering into the Track Lease Agreement, it would have learned that it was IDOT's position that the 1961 Agreement prohibited advertising on the leased property, and thus, Defendant did not have clear title to grant the leasehold to Plaintiff for advertising, something Plaintiff was powerless to discover outside of Defendant. Additionally, Defendant failed to disclose its pending multi-million dollar grant application with IDOT. Defendant's decision to remove the MSU from the track was due to its unwillingness to jeopardize the pending grant application with IDOT. Had Defendant disclosed either of these facts, Plaintiff would not have entered into the Track Lease Agreement. This Court must decide whether the failure to disclose the 1961 Agreement and/or the pending IDOT grant constituted either fraudulent or negligent concealment/misrepresentation under Illinois law. *See Neptuno v. Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill.App.3d 567, 571 (1st Dist. 1998) (setting forth elements of fraudulent misrepresentation claim); *Stewart v. Thrasher*, 242 Ill.App.3d 10, 16 (4th Dist. 1993) (setting forth elements for fraudulent concealment claim); *Board of Education of the City of Chicago v. A, C, & S, Inc.,* 131 Ill.2d 428, 452 (1989) (the elements of negligent misrepresentation are substantially similar to those for fraudulent misrepresentation except that the required mental state is less stringent in that the defendant need not know that the statement is false, but rather act carelessly in ascertaining the statement's truth); *Rankow v. First Chicago Corp.*, 870 F.2d 356, 365 (7th Cir. 1989) (a business that supplies non-informational goods or serves as well as information (a hybrid business) may be liable for negligent misrepresentation if the information furnished was "an important part of the product it offered" and used by the

plaintiff to guide it in its business transactions); *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 573 fn 11 (7th Cir. 2012) (acknowledging that Illinois recognizes a negligent concealment claim that is substantially similar to a negligent misrepresentation claim except that instead of an affirmative statement, the defendant negligent, but not intentionally, failed to disclosed a material fact).

        Respectfully submitted,

        **BELL NUNNALLY & MARTIN LLP**

By:   */s/ Mike J. Bowers*
       Mikel J. Bowers (*admitted pro hac vice*)
       Texas Bar No. 02734550
       mikelb@bellnunnally.com
       Marie A. Tenny (*admitted pro hac vice*)
       Texas Bar No. 24076730
       mariet@bellnunnally.com
3232 McKinney Ave., Suite 1400
Dallas, TX 75204-2429
Tel: (214) 740-1400
Fax: (214) 740-1499

**THE WIX LAW GROUP, LLC**

David G. Wix
500 Lake Cook Road, Suite 350
Deerfield, IL 60015
Tel: (847) 267-9949
Fax: (866) 267-2949

**ATTORNEYS FOR PLAINTIFF**
**FREIGHT TRAIN ADVERTISING, INC.**

## CERTIFICATE OF SERVICE

The undersigned states that on the 11th day of October, 2012, she caused a true and correct copy of the foregoing to be filed via the ECF System for the United States District Court, Northern District of Illinois, which system shall provide electronic notice of same upon the following ECF registered participant(s):

Michael J. Barron, Jr. (mbarron@fletcher-sippel.com)
Peter C. McLeod (pmcleod@fletcher-sippel.com)
Fletcher & Sippel, LLC
29 North Wacker Dr., Suite 920
Chicago, IL 60606-2832

/s/ *Marie A. Tenny*
Marie A. Tenny

1077026_1.DOCX / 7599.2