**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FREIGHT TRAIN ADVERTISING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-2803 |
| | ) | |
| CHICAGO RAIL LINK, L.L.C. | ) | |
| | ) | |
| Defendant. | ) | |

## CHICAGO RAIL LINK L.L.C.'S STATEMENT OF LEGAL ISSUES

Chicago Rail Link L.L.C. ("CRL"), hereby submits the following memorandum on the legal issues in this case necessitating judgment in favor of CRL on all claims asserted by Freight Train Advertising, LLC ("FTA") as well as on CRL's counterclaim for breach of contract due to FTA's failure to obtain the necessary public authority or permits required under the contract between the parties. As detailed more fully below, despite its obligation to do so, FTA made no real attempt to comply with state and local authorities as required under the Track Lease at any time whether before, during or after those authorities demanded that FTA remove its Mobile Signage Unit because it was in violation of the law. That is the only real issue in this case.

### I.    Factual Background

This case arises out of a contract (hereafter "Track Lease") between FTA and CRL, wherein FTA leased property from CRL to construct a railroad track on an unused overpass over the Dan Ryan Expressway in order to place a Mobile Signage Unit (the "Unit"). The Unit was intended for outdoor advertising displays. FTA's goal was to generate revenue by getting advertisers to place displays on the Unit. In return, CRL was to receive monthly rental

payments with the possibility of a thirty percent cut of the gross revenue generated by the sign. See Sections 3.1 and 3.2. The Track Lease represented the complete agreement of the parties and there were no other representations, promises, guarantees, warranties or commitments made between the parties other than that which was expressly set forth in the Track Lease.

Under the Track Lease, FTA assumed <u>all</u> responsibility and obligations to assure that the Mobile Signage Unit complied with all applicable laws, including but not limited to the Illinois Highway Advertising Control Act of 1971 and relevant portions of the City of Chicago Municipal Code, and to assume all risk of liability and hold CRL harmless from the consequences of non-compliance. See Track Lease, Section 4.3 ("Lessee [FTA] shall strictly comply with any and all law, by-law, order, ordinance, ruling, regulation, certificate, approval, consent or directive of any applicable federal, state or municipal government, government department, agency, or regulatory authority…"). FTA was also responsible for obtaining all necessary public authority and permission, including applicable permits, for the maintenance and operation of the Track. *Id*., Section 4.2. These provisions were included in the Track Lease after extensive negotiation between the parties. In order to ensure that FTA adhered to these provisions, CRL imposed a further condition in the Track Lease that allowed it to cancel the agreement should FTA be in violation of the law.

Although the Track Lease contains an indemnification provision, see Section 13, nothing in that provision obligated CRL to fight FTA's regulatory or compliance battle. Rather, CRL had the right to seek indemnity in the event that "any claim" was asserted against CRL. No claim relating to the Unit was ever asserted against CRL and CRL had no need to invoke its right to indemnification. In addition, nothing in the indemnification provision gave FTA the right to force CRL to invoke its right to indemnification. Lastly, nothing in the indemnification

agreement obligated CRL to provide any notice regarding communications from any governmental entity.

The Track Lease also gave CRL the right to move the Unit if FTA failed to perform its obligations, including obtaining public authority and permits for the Unit, under the Track Lease. See Section 12 ("Lessor [CRL] may discontinue operation over the Track…in the event Lessee [FTA] failed to materially keep or perform any obligation or stipulation stated in or resulting under this Agreement."). Furthermore, CRL also had the right to move the Unit in the event that a public authority, like the City of Chicago, ordered the sign to removed. See Section 16.1 ("Lessor shall not be obligated to operated the Track if it shall be prevented from doing so by acts of God, public authority…or if in the opinion of Lessor, it becomes unsafe to operate over said Track."). Nothing in either provision obligated CRL to provide notice to FTA of the removal of the sign. Of course, nothing in the Track Lease obligated CRL to break the law.

The Mobile Signage Unit was rolled out to its location on the tracks pursuant to the Track Lease on or around January 7, 2011. By January 10, the Illinois Department of Transportation ("IDOT"), started making consistent, explicit demands to FTA that the Mobile Signage Unit be removed because, in IDOT's words, the sign violated State law and was therefore "illegal." In particular, IDOT provided FTA with the specific provision of the Illinois Highway Advertising Control Act, 225 ILCS 440 et seq. (the "Act"). FTA's only substantive response was an email from its attorneys that the Act did not apply. IDOT did not agree and continued to demand that FTA remove its sign. FTA refused to do so.

Fed up with FTA's refusal to remove the sign, IDOT turned to CRL and began to exert pressure on it to remove the sign. IDOT took a two track approach. First, someone at IDOT found an agreement between it and the Chicago River and Indiana Railroad Company and

the New York Central Railroad Company (the "1961 Agreement"). The 1961 Agreement states that the Chicago River and Indiana Railroad Company and the New York Central Railroad Company shall not "erect[1]" any signs for advertising purposes on the bridges that were to be constructed pursuant to the agreement. Despite the facts that CRL is not a party to the 1961 Agreement, had no knowledge of it and is not a successor to either of the railroad parties identified in the 1961 Agreement, IDOT insisted that the 1961 Agreement applied to CRL and the Unit. Later, IDOT threated to stop a multi-million dollar grant to CRL because IDOT will not issue a grant to an entity that is in violation of the law. The grant only became an issue because of FTA's refusal to remove the sign. Neither the 1961 Agreement nor the grant, have any relevance to the underlying issue of the legality of the Unit.

Nonetheless, CRL allowed the Mobile Signage Unit to remain in place until it received an express order and demand from another governmental body, the City of Chicago. Pursuant to the City Building Commissioner's police powers under the City of Chicago Municipal Code, the City's Building Commissioner issued an emergency vacate order to CRL to remove the sign for safety reasons on February 10, 2011. Pursuant to that authority and the express terms of the contract, CRL removed the Mobile Signage Unit from its location on February 15, 2011. FTA made no attempt, at any time, to fight the vacate order.

In spite of the explicit requirements in the Track Lease obligating FTA to get all necessary permission and legal authority to allow them to place advertising displays on the Unit, FTA did not do so. FTA did not secure any state or local permits or ensure legal compliance for placement of the Unit even though the Track Lease imposed that obligation specifically. In fact,

---

[1] Assuming *arguendo* that CRL is the successor in interest to the 1961 Agreement, it does not make any difference because by its terms the agreement does not apply to the Unit. The definition of "erect" does not apply to a situation in which a rail car with two trailers and a signage structure attached is rolled onto the bridge. Therefore, the 1961 Agreement does not apply to the Mobile Signage Unit.

4

there is no record of FTA having any contact with state and local authorities concerning the Unit until IDOT made explicit direct demands on FTA to remove the sign. However, FTA did nothing to fight IDOT's determination that the sign was illegal. FTA has never filed any action challenging IDOT's determination. Similarly, FTA has never challenged the City of Chicago's emergency vacate order in any administrative or legal proceeding.

**FTA's Claims Against CRL**

**1. Breach of Contract**

From the clear terms of the Track Lease, CRL has not breached the agreement in anyway. Even if CRL has breached, FTA has the burden of proving that they have substantially complied with all the material terms of the agreement." *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599 (1st Dist. 1987) (citing *George F. Mueller & Sons, Inc. v. Northern Ill. Gas Co.*, 32 Ill.App.3d 249, 254 (1st Dist. 1975)). "A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract." *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599 (1st Dist. 1987) (citing *Robinhorne Constr. Corp. v. Snyder*, 113 Ill.App.2d 288, 297 (4th Dist. 1969). "[A] court must ask whether 'the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it.'" *Haisma v. Edgar*, 218 Ill.App.3d 78 (1st Dist. 1991).

"[U]nder Illinois law, the materiality inquiry focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision. *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (citations omitted). "Whether a breach is material involves a determination of 'whether the breach worked to defeat the

bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage consider [ ] such a breach to be material, and whether the allowance of reciprocal non-performance by the nonbreaching party will result in his accrual of an unreasonably or unfair advantage.'" *Virendra S. Bisla, M.D., Ltd. v. Parvaiz*, 379 Ill.App.3d 567, 573 (1st Dist. 2008).

In the case *sub judice*, FTA materially breached the Track Lease by failing to obtain authority and permission, including applicable permits, for the Mobile Signage Unit. The failure of FTA to comply with these provisions was therefore a material breach. As such, FTA cannot recover under the contract.

FTA's Trial Brief makes consistent allegations that by removing the Unit, under threat from the City of Chicago and the State of Illinois, CRL breached the Track Lease. FTA somehow arrives at the tenuous position that removal rendered FTA impotent to address the City and State's arguments against placement of the Unit. That simply is not true. FTA is asserting that CRL should have thumbed their nose at the City and at the State at CRL's own peril and refused to remove the Unit.

The Track Lease itself states that removing the sign was not a breach of contract - - as that option was explicitly granted to CRL in the agreement. See Track Lease, ¶¶ 12 & 16.1. Furthermore, FTA was, and still is, well within their legal rights to seek a declaratory action or other relief from the City or the State and nothing done by CRL prevents them from doing so. Therefore, even if this Honorable Court believes that FTA did not materially breach, FTA's assertions are not sufficient to show that CRL breached the contract in anyway.

## 2. FTA's Fraud Claims

### a. Fraudulent Misrepresentation

FTA alleges that pursuant to the 1961 Agreement, CRL did not have the authority to lease their property pursuant to the track lease, and in making representations to the contrary, CRL committed fraud. FTA does not allege any fraudulent misrepresentation related to the IDOT grant.

FTA's Fraudulent Misrepresentation claim is without merit and legal support. Under Illinois law,[2] in order "[t]o prevail on an action for fraud, plaintiff must establish by clear and convincing evidence: a false statement of material fact; knowledge by defendant that the statement is false; intent to induce the other party to act; reliance by plaintiff on that misrepresentation; and injury caused by that reliance." *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 343 (1st Dist. 2011) (citing *Wright v. Richards*, 144 Ill.App.3d 450, 457 (5th Dist. 1986)).

FTA cannot meet its burden. FTA cannot establish that CRL was the successor-in-interest to the Chicago River and Indiana Railroad Company and the New York Central Railroad Company. Further, FTA cannot show that CRL was aware of the 1961 Agreement – and for good reason – CRL had no way of discovering its existence. The Agreement was not properly recorded, and as such, is not enforceable. *See generally Kovacevic v. City of Chicago*, 47 Ill. App. 3d 674, 678 (1st Dist. 1977). FTA's argument that failure to disclose the 1961 Agreement constitutes fraudulent misrepresentation is nonsensical. Fraud requires knowledge of the falsity and the intent to induce another to act. CRL did not have knowledge of the agreement and FTA cannot show that the agreement even applied to CRL. Without knowing about the agreement, it is impossible for CRL to have intentionally induced FTA to act by withholding this information. As such, any claim for fraud that is based on the 1961 Agreement is wholly without merit.

---

[2] When the district court's subject-matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332, the district court applies the substantive law of the forum state as it believes the courts of that state would apply it. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 876 (7th Cir.2005).

### b. Fraudulent Concealment

FTA also alleges that CRL fraudulently concealed the 1961 Agreement and/or the proposed IDOT Grant. To state a claim for fraudulent concealment plaintiff must first prove that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 499-501 (Ill. 1996). A duty to disclose may arise if the parties are in a fiduciary relationship, or where defendant is in a position of influence and superiority over plaintiff. *Id.* "When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law (e.g. an attorney/client relationship), the party asserting the existence of the relationship has the burden of pleading and proving such by clear and convincing evidence." *Martin v. State Farm Mut. Auto. Ins. Co.*, 348 Ill. App. 3d 846, 851 (1st Dist. 2004) (emphasis added).

Illinois courts have consistently held that arms'-length business transactions do not give rise to a "special relationship" and concomitant duty to speak. *See Miller v. William Chevrolet/GEO, Inc.*, 326 Ill.App.3d 642 (1st Dist. 2001). "[O]rdinarily, in a business transaction each party guards his own interests and no fiduciary duty exists." *Ransom v. A.B. Dick Co.*, 289 Ill.App.3d 663, 673 (1st Dist. 1997) (citation omitted). In this case, it is obvious that there was no fiduciary relationship between FTA and CRL. The parties entered into an arms' length business arrangement which resulted in a lease, and as Illinois courts' have consistently held, such a relationship is not sufficient to establish a fiduciary relationship.

As no fiduciary relationship existed between the parties, plaintiff must show CRL was in a position of influence and superiority to establish a duty. To show the necessary dominance and superiority to establish such a relationship, there must be a very close, dependent

relationship. *See In re Estate of Long*, 311 Ill.App.3d 959, 963–64 (4th Dist. 2000); *Tully v. McLean*, 409 Ill.App.3d 659, 683 (1st Dist. 2011).

In the case *sub judice*, there is no evidence of dominance or superiority based on the Complaint or on any of the evidence presented in discovery. As discussed, this was an arms' length transaction with independent parties, and the only potential remedy (if any) lies in contract. *See Nat'l Wrecking Co. v. Midwest Terminal Corp.*, 234 Ill.App.3d 750, 764 (1st Dist. 1992) ("[W]e only need point out that the failure to perform a contractual promise, even when the promise is made with an intent not to perform[,] does not constitute common law fraud.") (citation omitted). Here, FTA approached CRL regarding an advertisement on their property. FTA principles have been in the outdoor advertising industry for years and negotiated with CRL to lease property in order to display an advertisement. The deal was conducted at arms' length between business organizations, and as such, there is nothing to show that a fiduciary or similar relationship existed between FTA and CRL. Without such showing, FTA's claims for fraudulent concealment must fail.

Even if plaintiff can establish a duty under fraudulent concealment, they cannot establish any breach of that duty. As discussed, Illinois law requires clear and convincing evidence of knowledge by defendant that the statement is false and the intent to induce the other party to act. *Hassan supra* at 343. First, as to the 1961 Agreement, the evidence is clear. CRL was not aware of the Agreement and had no way of discovering its existence. Fraud requires knowledge of the falsity and the intent to induce another to act. As such, any claim for fraud that is based on the 1961 Agreement is wholly without support.

As for FTA's allegations concerning the IDOT grant, knowledge and silence are not sufficient to constitute fraud. "'Mere silence does not amount to fraudulent concealment.'"

*Illinois Cent. Gulf R. Co. v. Dep't of Local Gov't Affairs*, 169 Ill.App.3d 683, 689 (1st Dist. 1988) (citations omitted). Fraudulent concealment "may not be a mere passive omission of facts during a business transaction but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak." *Allensworth v. Ben Franklin Sav. and Loan Ass'n,* 71 Ill.App.3d 1041, 1044 (2nd Dist. 1979). The grant only became an issue based on FTA's failure to obtain any and all required permits – as explicitly required by the agreement. Fraud in the concealment requires a "deliberate attempt to conceal any information. *Dep'l of Bus. & Econ. Dev. v. Pioneer Trust & Sav. Bank*, 15 Ill.App.3d 269, 276 (2nd Dist. 1973). Here, the IDOT grant had nothing to do with the Track Lease. The state of Illinois was not involved in the negotiations and was not to become a party to the Track Lease. The parties considered state and local approval and explicitly assigned that responsibility to FTA. The only reason the grant was threatened, was FTA's failure to obtain authority or permits for the Unit and failing to remove the sign in the face of IDOT's demands. Expecting CRL to foresee FTA's negligence and therefore advise them of the potential grant is not a duty established in law and is clearly not fraud. In short, FTA cannot meet there burden in establishing fraudulent concealment of either the 1961 Agreement or the IDOT Grant

### 3. Negligent Misrepresentation

FTA's next count in this matter is a claim for negligent misrepresentation. FTA contends that if CRL would have exercised reasonable care and competence, it would have known of the 1961 Agreement and the alleged limitation contained therein. Again, FTA does not allege any negligent misrepresentation as to the IDOT grant. CRL contends that FTA's claim for negligent misrepresentation must fail as they cannot show a duty under the law.

In order to properly state a cause of action for negligent misrepresentation, plaintiff's complaint must allege facts establishing a duty owed by the defendant to communicate accurate information." *Brogan v. Mitchell Int'l, Inc.*, 181 Ill. 2d 178, 183(1998) (citing *Board of Education v. A, C & S, Inc.*, 131 Ill.2d 428, 452(1989)). Illinois courts only recognize a duty to avoid conveying false information when (a) the information results in physical harm; or (b) where one is in the business of supplying information for the guidance of others. *Id.* The Illinois Supreme Court's test for whether a defendant is in the business of supplying information is:

> [W]hether the end product of the relationship between plaintiff is a tangible object (i.e., a product) which could be readily described in a contract or whether it is intangible. In short, if the intended result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception.

*Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 312 (1st Dist. 2002) (citation omitted). "Obviously a great many businesses exchange information as well as products… [w]here the information supplied is merely ancillary to the sale…defendant will not be found to be in the business of supplying information for the guidance of others in their business dealings." *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 28(1st Dist. 1999). Being in the business of supplying information occurs when the "value of the services lies in the analytical work… the end product is the ideas." *Id.* (accountants, stockbrokers, real estate brokers, attorneys and termite inspectors, as their businesses consists solely of information). CRL is a "railroad operator," and as such, provides common carrier railroad transportation for compensation. Therefore, CRL is not in the business of supplying information for the guidance of others. FTA made no allegations in its complaint to support a finding that CRL is in the business of supplying information, and indeed cannot produce any such information, as CRL operates railroads.

11

Morevoer, FTA cannot establish that CRL knew or should have known of the 1961 Agreement. Therefore FTA's negligent misrepresentation claim must fail.

## II. CRL's Claim Against FTA

In the Track Lease, CRL imposed on FTA all risk of compliance with all applicable laws for whatever was installed on the Unit and imposed all risk of permitting for the Unit on FTA. FTA was responsible for obtaining all necessary public authority and permission, including applicable permits, for the maintenance and operation of the Track. The Track Lease further clarified that FTA assumed all risk and liability for any costs, obligations or duties with regard to complying with any "Laws related to FTA's use of the Track and associated property" and would indemnify CRL for any violation of these Laws. In order to ensure that these provisions were adhered to, CRL imposed a further condition in the Track Lease that allowed it to cancel the agreement should FTA be in violation of the law.

In spite of these explicit requirements in the Track Lease regarding permits and legal authority, FTA did not perform them. FTA's actions and admissions make it clear they took absolutely no steps to ensure that their Mobile Signage Unit was legally compliant and properly permitted prior to it placement on or about January 10, 2011, in spite of the Track Lease's explicit mandates that they do so. And even after the legality of the Unit was challenged by state and city agencies FTA took no formal steps to contest those agencies. Therefore, FTA is in material breach of the Track Lease.

For CRL to recover for their breach of contract claim against FTA, CRL must show that (a) the existence of a valid and enforceable contract; (2) performance by the CRL; (3) breach of contract by FTA; and (4) resultant injury to the CRL. *Timan v. Ourada*, 972 N.E.2d 744, 751 (2nd Dist. 2012) (citation omitted). As the Factual Background *infra* discusses, the

parties entered into a valid and enforceable Track Lease and CRL complied with the agreement by allowing FTA to build track on their property and allowing FTA to attempt to operate the Unit.

FTA materially breached the Track Lease by failing to obtain authority and permission, including applicable permits, for the Mobile Signage Unit. FTA's responsibility was of the upmost importance and accordingly was referenced throughout the Track Lease. As further evidence of the importance of FTA obtaining the appropriate permits, the Track Lease contained an indemnification provision for any violation of the applicable laws. Furthermore, this provision was extensively negotiated by the parties. As the court in *Mayfair* held, the parties' negotiation and inclusion of multiple provisions addressing the same topic speaks to the materiality of the issue. *Mayfair Const. Co. v. Waveland Associates Phase I Limited*, 249 Ill.App.3d 192, 202 (1st Dist. 1993). As a result of FTA's breach, CRL has incurred substantial legal bills and has lost income from the lease of their property.

Dated: October 20, 2012

Respectfully Submitted

CHICAGO RAIL LINK L.L.C.

/s/ Michael J. Barron, Jr.
By One of its Attorneys

Michael J. Barron, Jr.
Peter C. McLeod
Fletcher & Sippel, LLC
29 North Wacker Drive, Suite 920
Chicago, IL 60606-2832
Phone: (312) 252-1500
Facsimile: (312) 252-2400
FIRM ID# 37478

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on the 12th day of October, 2012, he caused a true and correct copy of the foregoing Defendant's Statement of Legal Issues on behalf of Chicago Rail Link L.L.C. to be filed via the ECF System for the United States District Court, Northern District of Illinois, which system shall provide electronic notice of same upon the following ECF registered participant(s):

David G. Wix                          Mikel J. Bowers
The Wix Law Group                     Bell Nunnelly & Martin LLP
500 Lake Cook Road, Suite 350         3232 McKinney Avenue, Suite 1400
Deerfield, Illinois 60015             Dallas, Texas 75204

/s/ Michael J. Barron, Jr.