IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FREIGHT TRAIN ADVERTISING, LLC, | ) | |
| Plaintiff, | ) | 11 C 2803 |
| v. | ) | |
| | ) | |
| | ) | |
| CHICAGO RAIL LINK, LLC, | ) | Judge Virginia M. Kendall |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a contract for the placement of a large advertisement on a railroad bridge above a highway in Illinois. The Plaintiff Freight Train Advertising, LLC, ("FTA"), entered into a Track Lease with Defendant Chicago Rail Link, LLC, ("CRL"), under which FTA would lease a section of a bridge in the City of Chicago to display its Mobile Signage Unit upon which advertisement space could be rented. After FTA placed its Unit on the bridge, the Illinois Department of Transportation requested that CRL take down FTA's Unit, pursuant to a 1961 Agreement between IDOT and several railroads that they would not erect any signs for advertising purposes on the railroad bridges. FTA brought suit against CRL for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment and breach of contract, alleging that FTA suffered actual damages of at least $300,000 and consequential damages of at least $7,000,000 in the form of lost advertising revenue.

This case is now before the Court on CRL's Motion for Summary Judgment, or Alternatively for Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 36). CRL argues that FTA materially breached the contract by failing to secure the permits and legal

1

authorities' approval to place its advertising displays, and therefore FTA cannot maintain an action for breach of contract against CRL. In addition, CRL seeks summary judgment on FTA's remaining claims because they are premised on FTA being a successor-in-interest to the railroads that were parties to the 1961 Agreement with IDOT and CRL insists it was a bona fide purchaser who was not bound by the 1961 Agreement; in addition, CRL argues, that 1961 Agreement would not apply to FTA's Mobile Signage Unit. In the alternative, FTA argues that FTA's claim for negligent misrepresentation must fail because the facts do not support that CRL was in the business of solely providing information rather than providing a product with ancillary information. For the reasons discussed below, CRL's Motion is granted in part with respect to FTA's claim of negligent misrepresentation and denied in part with respect to FTA's remaining claims; accordingly, the parties should prepare for trial.

## I. MATERIAL UNDISPUTED FACTS[1]

FTA is a Limited Liability Company organized under the laws of the State of Texas with its principal place of business in Carrollton, Texas. (FTA 56.1 Resp. ¶ 2). FTA consists of Brad Berkley as its President and Ray Sipperley who holds an interest through Ray's Railroad Company. (*Id.* ¶ 8). CRL is a Limited Liability Company that provides common carrier railroad transportation for compensation, as a "railroad operator" pursuant to 49 U.S.C. § 10102(5), with its principal place of business in Denver, Colorado. (*Id.* ¶ 3, 4). Jurisdiction and venue are proper. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1391(a). Illinois state law controls. (Doc. 1, Ex. A, Lease § 21.11).

---

[1] For the purposes of this Opinion, CRL's Rule 56.1(a)(3) Statement of Material Facts, (Doc. 37), is referred to as "CRL 56.1 ¶ _." FTA's Local Rule 56.1(b)(3)(B) Response to CRL's Rule 56.1(a)(3) Statement of Material Facts, (Doc. 41), is referred to as "FTA 56.1 Resp. ¶ _." FTA also submitted an Additional Statement of Material Facts in Opposition to Summary Judgment pursuant to Local Rule 56.1(b)(3)(C),(Doc. 43), which is referred to as "FTA Add'l 56.1 ¶ _." CRL's Response to FTA's Statement of Additional Facts, (Doc. 47). is referred to at "CRL Add'l 56.1 Resp. ¶ _."

On August 26, 2010, FTA[2] entered into an agreement entitled the Track Lease with CRL. (*Id.* ¶ 9). Pursuant to the Track Lease, FTA leased from CRL a strip of property on a bridge in the City of Chicago overlooking a highway, on which to construct a short railroad track upon which to park and display a railcar with a Mobile Signage Unit. (*Id.* ¶ 10). CRL was aware that FTA intended to use the Mobile Signage Unit for advertising purposes. (CRL Add'l 56.1 Resp. ¶ 3). In fact, under the Lease, CRL would be compensated by both a monthly rental payment and 30% of the net profits obtained by FTA from renting the space for advertisements. (Doc. 1, Ex. A, Lease §§ 3.1, 3.2). Under the Track Lease, FTA agreed to:[3]

> comply with any and all law, by-law, order, ordinance, ruling, regulation certificate, approval, consent or directive and any applicable federal, state, or municipal government, government department, agency or regulatory authority or any court of competent jurisdiction, including without limitation, those pertaining to environmental matters, advertising and signage, and including, without limitation, regulations and laws found in Chapter 17-12 of the Chicago Municipal Code and the Illinois Highway Advertising Control Act of 1971 (collectively, "Laws") and other

---

[2] FTA was previously named Radiant OOH, LLC, which is the Party named as the Lessee in the Track Lease. For simplicity, the Court refers to FTA as the Party to the Track Lease.

[3] FTA moves to strike several of CRL's Rule 56.1(a)(3) Statement of Material Facts. (Doc. 42). FTA moves to strike CRL's 56.1 Statement ¶ 11 summarizing the Track Lease on the grounds that it is complex and unsupported by the record. Indeed, ¶ 11 contains 3 long sentences, the first of which summarizes two separate Sections of the Track Lease; and the second which states that "this provision was extensively negotiated by the parties" but the antecedent of "this" is not clearly identified and therefore could refer to either Section summarized. Nonetheless, FTA responds that it admits the third sentence of the paragraph, but then refers to a fourth sentence, of which there is none. In refuting the nonexistent fourth sentence, FTA refers to a Track Lease term that CRL summarized in its third sentence. The Court is left to presume that the parties agree that "this provision was extensively negotiated by the parties" but neither cites to the record and again, the antecedent of "this provision" is not clearly identified for the Court. Therefore, CRL's 56.1 Statement ¶ 11 violates L.R. 56(a) and FTA's Response violates L.R. 56(b)(3). *See also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (holding "[t]hree operative concepts animate [Rule 56.1]: facts, short, and specific."). The Court may disregard statements and responses that do not properly cite to the record and can choose "to ignore and not consider" information that is provided but does not comply with Local Rule 56.1. *See Cichon v. Exelon Generation Co.*, LLC., 401 F.3d 803, 809-810 (7th Cir. 2005). Furthermore, the Seventh Circuit has consistently held that district courts should mandate and enforce strict compliance with Local Rule 56.1. *See Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Pursuant to Local Rule 56.1 and for the purpose of clarity, the Court strikes CRL's 56.1 Statement ¶ 11 in its entirety and instead cites directly to the terms of the Lease (Doc. 1, Ex. A, Lease).

[CRL] requirements relating to the use of the Track.

(Doc. 1, Ex. A, Lease § 4.3).  Notably:[4]

> If [FTA]'s use of the "Track" . . . violates the "Laws", as defined in Section 4.3 [above], either Party may terminate this Agreement upon giving the other Party not less than sixty (60) days written notice to terminate for any reason whatsoever in that Party's sole discretion and regardless of performance or non-performance of any covenants and agreements . . . and without regard to any loss or damage incurred by either Party as a result of such termination or cancellation.

---

[4]FTA moves to strike several more of CRL's Rule 56.1(a)(3) Statement of Material Facts, (Doc. 42), to which CRL responded, (Doc. 48).  The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses.  Also, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."  *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Further, the Court may disregard statements and responses that do not properly cite to the record.  *See Cichon*, 401 F.3d at 809-810. Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997).  A local rule "of a federal district court is written by and for district judges to deal with special problems of their court," and therefore a district judge's interpretation of a local rule is entitled to considerable weight and great deference. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir.1995).  Furthermore, the Seventh Circuit has consistently held that district courts should mandate and enforce strict compliance with Local Rule 56.1.  *See Ammons*, 368 F.3d at 817; *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *Waldrige v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).  Consequently, the Court rules on the following CRL 56.1 Statements in the following manner: ¶ 11 is stricken as improperly presented and insufficiently supported by the record; ¶ 12 is stricken as an over-generalization of the contract clause and therefore a mischaracterization of the record; ¶ 13 is stricken as a mischaracterization of the contract clause; ¶ 14 is stricken as an over-generalization of the contract clause; ¶18 is stricken as argumentative and a mischaracterization of the record; ¶ 19 is not stricken: as stated by CRL in its objection to FTA's Motion to Strike, the Statement names the railroads that were parties to the 1961 Agreement with IDOT; ¶ 21 is stricken as argumentative and for misstating the record: the City of Chicago Order does not cite any section of the City of Chicago Municipal Code; ¶ 23 is stricken as argumentative; ¶ 24 is stricken as argumentative. ¶ 25 is not stricken: FTA admits that it did not contact any state or local authority prior to the Mobile Signage Unit's roll-out, and does not refute this assertion with evidence that FTA had contact after the roll-out but before IDOT's demand; ¶ 26 is stricken as argumentative; ¶ 29 is not stricken.  As for ¶ 34 and ¶ 35, which summarize deposition testimony from FTA's expert Art Spiros, (Doc. 39, Ex. 11),  and Exhibits 12 and 13, which are copies of recorded land deeds on which he relied in his deposition, the Court does not rely on these statements or exhibits to reach its conclusion that issues of material fact remain and therefore denies ruling on their admissibility as the issue is moot for purposes of this motion.  Although FTA's expert testified to his reliance on the land deeds in preparing his report (which is not provided to the Court), FTA disputes their admissibility due to lack of authentification and CRL must address that objection for its admission at trial.  Exhibit 14 is not stricken: a page from a common dictionary does not pose a problem of hearsay, foundation and authentication; regardless, the Court has not relied upon it in its analysis.

4

(Doc. 1, Ex. A, Lease § 1.2). The Track Lease was also:[5]

> made subject to the rights granted by or through [CRL] for any surface, subsurface or aerial uses antedating this Agreement, including but not limited to the construction, maintenance, operation, renewal and/or relocation of fences, pipelines, communication lines, power lines, railroad tracks and signals, and any and all applicable appurtenances. [CRL] accepts and reserves the right to grant additional uses of the same or similar nature subsequent to the execution of this Agreement, without payment of any sum for damages, so long as such use does not unreasonably interfere with the use of Track by [FTA] for a Mobile Signage Unit.

(Lease § 21.7). In addition, FTA agreed to:

> defend, indemnify, release and hold harmless [CRL] from any and all costs, obligations, liabilities, duties, fines, penalties, judgments and/or attorney's fees that Lessor may incur as a result of addressing or defending any alleged or actual violation of any Laws related to [FTA]'s use of the Track and associated property.

(Lease §8). In addition, FTA agreed to:

> obtain[ ], without expense to [CRL], all necessary public authority and permission, including applicable permits, for the maintenance and operation of the Track.

(Lease §4.2). The Mobile Signage Unit was rolled out to its location on the bridge's tracks on or around January 10, 2011. (FTA 56.1 Resp. ¶ 17). Of the communications amongst CRL, FTA and the Illinois Department of Transportation that followed the roll-out, the parties dispute the admissibility, relevance and import. The parties also fail to present the emails in a chronological or coherent manner or in conformity with Local Rule 56.1. Nonetheless, the parties do not dispute that on January 28, 2011, Andy Rabadi, a Senior Railroad Engineer with the Illinois Department of

---

[5]CRL mischaracterizes Track Lease § 21.7 when it asserts in CRL's 56.1 Statement ¶ 12 that "FTA agreed to be subject to all pre-existing conditions, liens and rights that impacted or may have impacted the track that was covered by the Track Lease." This assertion overstates the term that the Track Lease is subject to the "rights granted by . . . CRL . . . for any uses antedating this Agreement" and that "[CRL] . . . reserves the right to grant additional uses . . . so long as such use does not unreasonably interefere with the use of Track by [FTA}." Accordingly, ¶ 12 is stricken for violating Rule 56(c)(1)(A) and instead the Court cites and relies upon the exact language of the Track Lease.

Transportation, emailed Adam Hess of CRL requesting that the Mobile Signage Unit be removed immediately.[6] (Doc. 45, Ex. A-6). Rabadi stated that the removal was necessary to comply with an Agreement executed in 1961 by the State of Illinois and the Chicago River and Indiana Railroad Company and the New York Central Railroad Company, which states: "RAILROAD agrees not to erect, nor grant permission to erect, any advertising sign on RAILROAD property within the limits of this improvement." (Doc. 45, Ex. A-2, p. 13).

On February 10, 2011, Adam Hess of CRL forwarded to Brad Berkley and Ray Sipperley of FTA the 1961 Agreement, stating that they needed to get on the same page and that CRL was performing some additional research to verify its validity. (Doc. 45, Ex. A-2, p. 13). Also on February 10, 2011, Mike Shore of CRL met with the City of Chicago Building Commissioner Richard Monocchio. (FTA Add'l 56.1 ¶ 28; Doc. 45, Ex. A-12). The Commissioner provided CRL with an Emergency Vacate Order, citing its police powers, to order that the sign be removed because it constituted a hazard to the public roadway. (Doc. 45, Ex. A-12). CRL removed the Unit from its location over the Dan Ryan Expressway on February 15, 2011. (FTA 56.1 Resp. ¶ 22).

In its First Amended Complaint, FTA claims that the 1961 Agreement was between CRL's predecessors-in-interest and the State of Illinois, and expressly prohibited CRL from erecting or permitting others to erect advertisements on the subject property. FTA alleges that when Adam Hess

---

[6]CRL summarizes the communications between CRL and IDOT as "Almost immediately, [IDOT] started making consistent explicit demands to FTA that the Mobile Signage Unit be removed because it was a violation of the law." (CRL's 56.1 Statement ¶ 18). FTA objects to the Statement as argumentative. The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses. In this case, the Court finds the Statement to be both argumentative and a mischaracterization of the record. Therefore, CRL's 56.1 Statement ¶ 18 is stricken and the Court cites directly to the underlying record, which FTA provided in support of its objection in FTA 56.1 Resp. ¶ 18.

and CRL represented that CRL had the authority to enter into the Track Lease, CRL knew or should have known that capacity was lacking. As such, FTA argues, CRL's material statements were false or made with sufficient recklessness to be actionable as fraudulent misrepresentation. (Doc. 19, Complaint, p. 6). In addition, FTA alleges CRL negligently misrepresented its ability to convey a leasehold, when it failed to exercise reasonable care in communicating limitations on the land to FTA. (Doc. 19, Complaint, p. 7). In the alternative, FTA alleges, CRL knew that it lacked the right to enter into the Track Lease and fraudulently concealed that fact from FTA. (Doc. 19, Complaint, p. 8). Finally, if in the alternative the Track Lease is valid and enforceable, FTA argues that CRL breached the contract when it failed to transfer the leasehold interest as due. (Doc. 19, Complaint, p. 9).

CRL asserts that it had no knowledge of the 1961 Agreement until late January, 2011, after the Mobile Signage Unit was in place, when IDOT sent CRL a copy of the 1961 Agreement. (FTA 56.1 Resp. ¶ 32).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is properly denied where . . . the evidence in support of the motion does not establish the *absence* of a genuine issue of material facts, even if *no* evidence opposing the motion has been presented." *Spreen v. Brey*, 961 F.2d 109, 111 (7th Cir. 1992). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)*; Omnicare Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). However, on summary judgment the Court will limits its analysis of the facts to the evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *See F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). When a proposed statement of fact is supported by the record and not adequately controverted by the opposing party, the Court will accept that statement as true. *See Alberio*, 246 F.3d at 933. To adequately dispute a statement of fact, the opposing party must cite to specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact. *See Id*. Factual disputes "are genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 676 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248) (internal quotations and citations omitted).

The existence of a materially disputed issue of fact will be sufficient to avoid summary judgment only if the disputed fact is determinative of the outcome under the applicable law. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *Tyler v. Runyon*, 70 F.3d 450, 464 (7th Cir. 1995). The Court may resolve a dispute on summary judgment where the parties do not dispute the facts that actually occurred, but merely dispute the legal significance of those facts. That the parties differ on the legal ramifications to be drawn from the undisputed facts in the record is not a bar to summary judgment.

8

## III.  DISCUSSION

FTA's claim for breach of contract is based on its allegations that CRL failed to transfer a leasehold interest to FTA to advertise on CRL's property; failed to operate the leased track for the purpose of serving FTA; failed to provide FTA access to the leased track to park its Mobile Signage Unit; interfered with FTA's quiet enjoyment of the leased track; and removed FTA's Mobile Signage Unit from the leased track without FTA's authorization or permission.  In response, CRL argues that FTA was itself in material breach of its obligations under the Track Lease and therefore cannot sustain a claim against CRL.

Under Illinois contract law, "a party seeking to enforce a contract has the burden of proving that he has substantially complied with all the material terms of the agreement." *Goldstein v. Lustig*, 507 N.E.2d 164, 168 (Ill. App. 1987) (citation omitted).  "A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract." *Id.*  Under the material breach doctrine, "'[a] party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party.'"  *Dragon Const., Inc. v. Parkway Bank & Trust*, 678 N.E.2d 55, 58 (Ill. App. 1997) (citing *Susman v. Cypress Venture*, 543 N.E.2d 184, 187 (Ill. App. 1989)).  A material breach occurs where the covenant not performed is of such importance that the contract would not have been made without it.  *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. 1991).

CRL argues that the undisputed terms of the Track Lease required FTA, and not CRL, to ensure its Mobile Signage Unit was legally compliant and had the proper permits before its placement on CRL's track.  FTA does not dispute that it did not secure any state or local permits related to its use of the track. (Doc. 40, p. 4).  FTA asserts that only federal law controls the

maintenance of the railroad track and that it complied with all applicable federal laws.  CRL denies

that only federal law applies, and argues that because FTA made no efforts to ensure compliance in

spite of the Track Lease's terms, and only responded to IDOT's demands by arguing that the laws

cited did not apply to its Unit, CRL is entitled to judgment as a matter of law.  However, significant

factual disputes remain as to what permits are *applicable* that FTA failed to secure or what

regulations control that FTA violated.

The Track Lease requires FTA to "obtain[ ], without expense to [CRL], all *necessary* public

authority and permission, including *applicable* permits, for the maintenance and operation of the

Track."  (Lease §4.2) (emphasis added).  FTA asserts that it complied with all applicable safety

regulations in designing and operating the Mobile Signage Unit.  (FTA Add'l 56.1 ¶ 29).  CRL

attempts to deny this fact by stating that FTA did not comply with all applicable safety regulations

and cites to the "City of Chicago's Municipal Code, including §§ 13-20-500 *et seq.* (Permitting

Procedures for Signs, Billboards, etc.), §§ 17-12-100 *et seq.* (Standards for Signs) and §§ 18-27-6001

*et seq.* (on electric signs)."  (CRL Add'l 56.1 Resp. ¶ 29).  Although CRL promises that "[e]xcerpts

from the City of Chicago's Municipal Code are included in an Appendix," the "excerpts" included

are a total of 89 pages without any clear indication to the Court of what specific regulation within

the 89 pages was violated.  (Doc. 49, Ex. 2, p.1-89).  The requirements for responses under Local

Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material

facts asserted."  *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

Further, the Court may disregard statements and responses that do not properly cite to the record..

*See Cichon*, 401 F.3d at 809-810.  A general citation to 89 pages of municipal regulation is evasive

and improper and insufficient to refute a factual statement.  CRL cites to the City of Chicago's Order

of Removal dated February 10, 2011, as grounds for FTA's failure to comply with municipal regulations. (Doc. 45, Ex. A-12). CRL also cites to the Illinois Highway Advertising Control Act of 1971, 225 ILCS §§ 440, *et seq.*, as implemented by 92 Illinois Administrative Code § 522.150. (CRL Add'l 56.1 Resp. ¶ 23). Yet CRL fails to identify which of the 45 pages of Code apply. *See* http://www.dot.state.il.us/landacq /illadm.pdf (last accessed August 20, 2012). General citations to state and municipal code are wholly insufficient to advise the Court of what applicable laws FTA may have violated. Furthermore, CRL does not provide any guidance on the applicability of these regulations to a similar sign at issue in a different case, perhaps in the form of a citation to federal or state caselaw. Nor does CRL provide any testimony from IDOT officials citing which permits, laws or regulations were violated. Consequently, CRL's argument that FTA was in breach of the contract for failing to secure permits is insufficiently supported by the evidence.

In response, FTA cites to Adam Hess's deposition testimony in which he agrees with FTA that only federal laws, and not state and municipal laws, apply to rail car advertising. (FTA Add'l 56.1 ¶ 25). FTA also cites to emails between FTA and CRL that summarize FTA's legal research and conclude that the Mobile Signage Unit complied with all applicable laws. (FTA Add'l 56.1 ¶ 26). To object to these assertions, CRL cites to Section 1A.08 of the Manual for Uniform Traffic Control Devices, which is incorporated in Illinois. (CRL Add'l 56.1 Resp. ¶ 29). However, the Section addresses the "Authority for Placement of Traffic Control Devices." (Doc. 49, Ex. 1, p.4). The applicability of this regulation to the sign at issue in this case is not made clear to the Court. Again, CRL's general citation to bodies of law fails to adequately controvert FTA's assertions of its compliance with applicable laws. The record does not present a finding made by any judicial, administrative or authoritative body that any permits or statutes are applicable to FTA's advertising

11

railcar or that FTA was in violation of a specific law or regulation. CRL's evidence in support of its motion does not establish the *absence* of a genuine issue of material facts; consequently, summary judgment is improper. *See Spreen v. Brey*, 961 F.2d 109, 111 (7th Cir. 1992).

In fact, the IDOT letter requiring CRL to remove the Mobile Signage Unit cites solely the 1961 Agreement, a contract amongst IDOT and railroads, and does not cite any law, regulation or permit which with the Mobile Signage Unit fails to comply. CRL insists the 1961 Agreement does not bind CRL because CRL was a bona fide purchaser; and in the alternative, if CRL was bound to the 1961 Agreement as a successor-in-interest to its railroad parties, the Mobile Signage Unit does not fall within the prohibition against the erection of signs because the Unit is mobile. In effect, CRL's position is that the 1961 Agreement does not bind CRL but that FTA should have performed due diligence to apprise itself of its existence because it could bind FTA, thereby defeating FTA's claims of breach of contract, fraudulent misrepresentation, negligent misrepresentation and fraudulent concealment. Yet Andy Rabadi of IDOT testified that he contacted Adam Hess of CRL because he believed the 1961 Agreement applied to CRL and its ownership of the tracks at issue. (Doc. 45, Ex. E, p. 66). If an agent of CRL had called in advance, Rabadi testified, and asked if there were any documents affecting the ownership of the tracks, Rabadi "most likely" would have provided the 1961 Agreement. (Doc. 45, Ex. E, p. 66-67). In contrast, Rabadi testified that he would "probably not" have provided the 1961 Agreement to a third party, such as FTA, without a Freedom of Information Act request:[7] (Doc. 45, Ex. E, p. 88-89). CRL objects to the admissibility

---

[7]Q: . . . if someone had contacted you and said they had an agreement with Chicago Rail Link and would like to get records regard–that might impact the ownership of the Root Street Wye, would you have provided that person records as well?
A: Probably not. I would–I would probably only send it to somebody in that–who is a party to that agreement, you know, like Chicago Rail Link. Or some Joe Schmo from the street calls and wants an agreement, although I believe it's public record, but I wouldn't have just voluntarily provided it without a freedom of information.

of Rabadi's testimony as incompetent because FTA has failed to present evidence that Rabadi is able to speak for IDOT's record disclosure policies or Rabadi's authority to release IDOT records. (CRL Add'l 56.1 Resp. ¶ 8). The Court is unable to determine Rabadi's competence to speak for IDOT's disclosure policies because the issue has not been briefed by the parties but notes that Rabadi's competence to speak for IDOT's contractual arrangements with railroads appears to be undisputed. When viewing this testimony and drawing all reasonable inferences in favor of FTA, it appears that Rabadi is competent to testify that FTA would have been unable to apprise itself of the existence of the 1961 Agreement and that it is applicable to CRL to preclude the formation of the Track Lease.

FTA argues that CRL had a multi-million dollar grant application pending before IDOT, whose threatened denial is what prompted CRL to remove the Mobile Signage Unit to comply with IDOT's letter based on the 1961 Agreement. CRL does not deny the existence of the grant application but disputes its relevance to the case and the materiality to the Track Lease. In support of its assertion, FTA cites a litany of statements made both by CRL employees and by IDOT employees in depositions and emails. ((FTA Add'l 56.1 ¶ 14). CRL objects that this assertion is inadmissible because it relies on statements made in settlement discussions, but does not delineate precisely which statements came from settlement discussions and which did not. (CRL Add'l 56.1 Resp. ¶ 14). Presumably, the emails that do not involve FTA were not from settlement discussions. On January 11, 2011, IDOT employees circulated an internal email in which Chris Mueller wrote to Gabriela Cleveland and Mike Galgano that the sign appeared mobile on a railroad track rather than permanently affixed and that "[he] do[es]n't believe there are any rules for this kind of advertising . . . now what?". (Doc. 45, Ex. H-4). On January 16, 2011, before IDOT contacted Adam Hess

---

(Doc. 45, Ex. E, p. 88-89).

13

directly with the 1961 Agreement, a nonparty railroad industry contacted CRL employees, including Adam Hess, that the Mobile Signage Unit was attracting attention from IDOT. (Doc. 45, Ex. A-10). Mike Shore of CRL emailed Adam Hess that "[d]epending on how this plays out, we are going to have to be very direct with [FTA] that we are not interested in putting our pending idot grant in jeopardy." (Doc. 45, Ex. A-10). On January 31, 2011, Gabriela Cleveland of IDOT emailed Andy Rabadi that she told FTA's lawyer that "the railroad grant to Chicago Rail Link is in jeopardy." (Doc. 45, Ex. H-2). On February 13, 2011, FTA circulated an email that Adam Hess had stated that CRL "will make this work just asked us to be patient and let them get their funding from State behind them th[e]n they will fight the issue of the lease which they feel is not binding to their use of the track." (Doc. 45, Ex. I-4). FTA provides an email chain dated February 23, 2011, between Rick Kabaker and Charles McClarty, both of IDOT, stating that "nothing will be done [on CRL's grant application] until we have confirmation that the illegal sign is gone." (Doc. 45, Ex. H-2). On June 24th, 2011, Ted Johnson emailed Adam Hess that "the reality is that if the State of IL DOT was not providing track funds and holding CRL hostage to these funds that the advertising rail car would never have been pulled out of service. . . . The decision to pull the car had nothing to do with the FTA agreement and everything to do with CRL not wanting to jeopardize the track funding." (Doc. 45, Ex. I-2).

CRL does not address in its briefings FTA's arguments that the multi-million dollar grant application was material to the formation of the Track Lease, but only asserts in its objections to FTA's 56.1 Statements that the grant application is irrelevant, which is insufficient to controvert the fact and whose argument the Court will not consider. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006)( Rule 56.1 statements' purpose is to identify the relevant evidence supporting the

material facts, not to make factual or legal arguments, so a district court should not address the parties' arguments made in their Rule 56.1 statements and responses). To rule on a movant's motion for summary judgment, the Court "must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail" in its submission. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 676 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). These disputed communications do not present evidence that is so one-sided that CRL may prevail. Instead, the record presents evidence that raises a question of fact as to whether CRL's other interests, such as its pending grant application with IDOT, prompted CRL to remove the Mobile Signage Unit under the guise of FTA's breach of contract due to illegality.

This interest in the pending grant application, FTA argues, was material to the formation of the Track Lease and should have been disclosed prior to the formation of the Track Lease, thereby constituting fraudulent misrepresentation or fraudulent concealment. A material concealed fact is one such that "had the other party been aware of it, he would have acted differently." FTA argues that it would not have entered into the Track Lease because FTA would have viewed the looming grant application and the 1961 Agreement as contractual disputes may pose a greater risk than regulations. (Doc. 40, p. 12). The determination of materiality is ordinarily not suited summary judgment because it is "a complicated question of fact." *Sahadi v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983); *see also Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 714 (7th Cir. 1993) (emphasis in original) ("The determination of whether a party has committed breach of contract is a question of fact."). CRL does not address FTA's argument regarding the importance of the grant application and of its materiality to the formation of the Track

Lease and the Court will not make a determination without the parties' adversarial efforts.

In the alternative, FTA argues, even if there were permits or laws that FTA failed to secure, the Track Lease gives FTA the right to address and defend the Mobile Signage Unit against any alleged violation.[8] The indemnity provision ensures that FTA shall defend and indemnify CRL against any alleged violations. (Lease § 8). The termination provision gives both parties the right to terminate the contract after giving the other party sixty days' written notice, if FTA's use of the track violates any laws. (Lease §1.2). Viewing the contract in the light most favorable to FTA gives rise to the inference that the parties contemplated an allegation of a violation, which would not constitute a breach of the Track Lease, and would not terminate the contract immediately but instead would have to be addressed by the FTA in a timely fashion. CRL cites *Dragon Construction, Inc. v. Parkway Bank & Trust*, 678 N.E.2d 55 (Ill. App. 1997), for the proposition that FTA's failure to seek any permits or act on its indemnity obligations foreclosed CRL's ability to exercise its rights under the lease–the rights being to provide a location for the Mobile Signage Unit and to collect rent. Arguably, *Dragon* lends support to FTA's position instead. In *Dragon,* the court found that homeowners who fired their contractor failed to give the surety bonding company seven days' written notice as required by the performance bond. *See Id.* at 58. This notice period was critical because it would have allowed the bonding company to participate in the selection of a successor contractor, to minimize its liability by ensuring that the lowest possible construction bid was selected

---

[8]In addition, FTA argues that any potential breach by FTA in securing a permit would be irrelevant because CRL breached first by failing to convey the leasehold. CRL argues that FTA waived this argument because FTA cited no authority. *See, e.g., Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004). However, the lack of authority alone does not doom an argument; instead, the "absence of any supporting authority or development of an argument [that] constitutes a waiver on appeal." *Id.* In this case, FTA has repeatedly argued its claim that CRL breached the Track Lease by failing to convey the leasehold and developed the argument that CRL should not have entered into Track Lease at all due to its lack of capacity and sole ability to apprise itself of this lack of capacity. Consequently, FTA's argument is not waived.

to complete the job. *Id.* Therefore, the homeowners' failure to give notice to the bonding company and also hiring a successor contractor without the bonding company's participation constituted a material breach that rendered the surety bonds null and void. *Id.* Similarly to the homeowners, a notice period and an opportunity to address IDOT's concerns would have allowed FTA to establish its compliance and mitigated its damages. The record before does not make clear whether FTA could and did have an opportunity to ensure compliance and mitigate its damages. CRL argues that FTA still has the ability to defend itself but FTA disagrees. Again, this is a question of fact that precludes the Court's determination at this time that CRL prevails as a matter of law.

The existence of any laws and permits that preclude the signage at issue, the applicability of the 1961 Agreement to CRL and to FTA, the materiality of the 1961 Agreement to FTA's decision to enter the Track Lease, the materiality of the pending multi-million dollar grant application, whether FTA could have apprised itself of these potential limitations, whether CRL breached the Track Lease by removing the sign without allowing FTA to address the City's concerns and whether FTA can still address any allegations of illegality are all disputes of material fact that preclude the conclusion that CRL is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322.

Nonetheless, CRL prevails in its motion for summary judgment on FTA's claim for negligent misrepresentation. Under Illinois law, a cause of action for negligent misrepresentation has the following elements: (1) a duty owed by the defendant to the plaintiff to communicate accurate information, (2) a false statement of material fact, (3) carelessness or negligence in ascertaining the truth of the statement by the defendant, (4) the defendant's intention to induce action by the plaintiff, (5) action by the plaintiff in reliance upon the truth of the statement, and (6) damage to the plaintiff

17

resulting from such reliance. *See Board of Education v. A., C. & S., Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989). The existence of a duty owed by the defendant to the plaintiff is a question of law. *See Rowe v. State Bank*, 617 N.E.2d 520, 524 (Ill. 1993). Under Illinois law, a duty to communicate accurate information exists if the defendant's negligently conveyed false information results in physical injury to a person or harm to property, or if the defendant is in the business of supplying information for the guidance of others in their business transactions. *See Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998) (citing *Board of Education v. A, C & S, Inc.*, 546 N.E.2d 580 (Ill. 1989)). This latter category is mainly for accountants, brokers, attorneys and termite inspectors, whose businesses provide a product that consists solely of information, as opposed to retailers and manufacturers whose information relates to their goods or services and is merely ancillary to the sale. *See Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 297 (Ill. App. 1999). The "difficult cases" in between include life insurance companies, banks and financial inspectors. *See Id.* The case here is in a category of businesses whose information relates to the good sold.

CRL, as a railroad carrier, cannot be likened to a broker or termite inspector whose business service is solely the conveyance of information. The Track Lease memorializes the conveyance of a leasehold interest on private property on which to install a rail track and roll out a Mobile Signage Unit. Illinois law precludes a business selling a tangible product, such as CRL in this case, from being held to a duty beyond mere contract law. *See Brogan*, 692 N.E.2d at 278 ("The limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society."); *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443

(Ill. 1982) (tort law is not intended to compensate parties for monetary loses suffered as a result of duties which are owed to them simply as a result of a contract).  Consequently, CRL is entitled to summary judgment on FTA's claim for negligent misrepresentation.

## IV.  Conclusion

For the foregoing reasons, CRL's Motion for Summary Judgment is denied in part and granted with respect to FTA's claim for negligent misrepresentation.


_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 14, 2012